UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-cv-60651

IN RE SUBPOENA TO
FEDERAL BUREAU OF INVESTIGATION,
and UNITED STATES ATTORNEY'S OFFICE
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNDERLYING CASE TITLE AND NUMBER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE, individually and on behalf of
all others similarly situated,

Plaintiff,

v.                                                    NO. 25-CV-08520-JSR

BANK OF AMERICA, N.A.,

Defendant.
_____/

NON-PARTIES, FEDERAL BUREAU OF INVESTIGATION'S AND UNITED STATES
ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF FLORIDA'S MOTION
TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER
WITH SUPPORTING MEMORANDUM OF LAW

The Federal Bureau of Investigation (FBI), and the United States Attorney's Office for the

Southern District of Florida (USAO SDLF), (collectively "DOJ") components of the United States

Department of Justice (DOJ), who are not parties to these proceedings, by and through the

undersigned Assistant United States Attorney, pursuant to Rule 26 and 45 of the Federal Rules of

Civil Procedure, 28 U.S.C. § 16.21, *et seq.*, 5 U.S.C. § 552a(b), Local Rule 7.1 and other authority

specified below, hereby move this Court for an entry of a protective order and to quash the

"Subpoena to Testify at a Deposition in a Civil Action" (Subpoenas) that Defendant Bank of

1

America, N.A. (BANA) caused to be served upon the FBI and USAO SDFL.[1] The Motion to Quash is properly brought in the United States District Court for the Southern District of Florida as the only proper venue for filing a motion to quash is the district where compliance is required. *See Jordan v. Commissioner, Mississippi Department of Corrections*, 947 F.3d 1322 (11th Cir. 2020); *see also* F. R. Civ. P. 45(c), (d)(3). Further, the FBI office in the Southern District of Florida is located in Broward County.

For the reasons discussed in detail below and the declaration filed in support of this motion, the Subpoenas should be quashed and a protective order entered because in accordance with 28 C.F.R. § 16.21, *et seq.* (the Department of Justice's *Touhy*[2] regulations), after considering BANA's grounds for seeking the deposition and production of documents, and the parameters sought for the proposed deposition and production by DOJ, DOJ has within the scope of its authority, refused BANA's demand based on: (a) BANA's failure to adequately comply with the *Touhy* regulations; (b) the parameters of the proposed depositions and productions that counsel for BANA have identified, to the extent such documents exist that have not already been produced under the Epstein Files Transparency Act (EFTA): (i) seek information protected by privilege, including but not limited to attorney client privilege, work product privilege, deliberative process privilege, and the law enforcement/investigatory files privilege; and (ii) seek information subject to the Privacy Act, 5 U.S.C. § 552a(b) and the Bank Secrecy Act (BSA), with which BANA has thus far not complied.

---

[1] A copy of the Subpoenas are attached as Exhibit A.
[2] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951).

## MEMORANDUM OF LAW

### I.    <u>Factual Background</u>

On January 2, 2026, Plaintiff filed her "Amended Individual and Class Action Complaint" in the United States District Court for the Southern District of New York. *See* Exhibit B, Amended Complaint. According to correspondence received from counsel for BANA, discovery in the case is set to close on March 16, 2026. *See* Exhibit C, Letter from Jones Day, Feb. 20, 2026. On Monday, February 23, 2026, the USAO SDFL was served with Subpoenas for both the FBI and USAO SDFL. *See* Exhibit A. The Subpoenas are identical and indicate that the FBI and USAO SDFL should appear for a deposition on March 4, 2026, at 10:00 a.m. *Id*. The Subpoenas were accompanied by an exhibit listing the testimony and document production sought.

Immediately following USAO SDFL's receipt of the Subpoenas, the Subpoenas were evaluated, and it was determined that the Subpoenas did not comply with the United States Department of Justice's *Touhy* regulations promulgated at 28 C.F.R. § 16.21 *et seq*. or the Privacy Act (5 U.S.C. § 552a(b)). On March 4, 2026, letters were sent to counsel for BANA advising of their need to comply with both the *Touhy* regulations and the Privacy Act. *See* Exhibit D, March 4, 2026, letters to BANA. As to the Privacy Act, it was further explained that without an order of a court of competent jurisdiction, the Privacy Act statutorily prohibits DOJ from releasing any information to BANA, should any documents exist that have not already been produced under the EFTA. BANA was also informed that DOJ was statutorily prohibited from releasing any information related to Suspicious Activity Reports (SARs) pursuant to the Bank Secrecy Act.

On March 4, 2026, at 11 a.m., the undersigned conferred via telephone about the objections to the Subpoenas and requested that the Subpoenas be withdrawn due to non-compliance with the DOJ *Touhy* regulations and asserted privileges. Counsel for BANA was informed that if the

Subpoenas were not withdrawn, a motion to quash would be forthcoming. During the call, counsel

for BANA indicated that they had reviewed all documents released under the EFTA and could

provide DOJ with a list of documents found in the publicly available files, that were responsive to

the Subpoenas. Counsel for BANA requested until the end of the day to decide if they would

withdraw the Subpoenas or, at a minimum, attempt to narrow the scope of the Subpoenas, and

provide the list of documents already found in the publicly available documents. At 10 p.m. on

March 4, 2026, DOJ received an email response from counsel for BANA in which BANA declined

to withdraw the Subpoenas, and "attempted" to narrow the scope by requesting the following:

1. Whether there were any investigations beyond Investigation No. 31E-MM-108062 and Investigation No. 50D-NY-3027571. Your letter referenced only these two investigations, but our letter and subpoena also sought information about other investigations, if any.

2. The dates on which each investigation (not just the two that we identified) opened and closed.

3. Whether USAO or the FBI made inquiries to Bank of America, Merrill Lynch, or BofA Securities in the course of each investigation, and if so, which investigation(s) and the date(s) of such inquiry.

4. Whether Jeffrey Epstein's finances were considered in connection with each investigation, and if so, which investigation(s).

5. The number of SARs considered by the USAO or the FBI in connection with each investigation, and to the extent that documents relating to those SARs have already been disclosed, which SARs were considered.

However, such attempted narrowing still poses an undue burden on DOJ to search millions of

records, many if not all of which are publicly available, and expands the request from what was

originally seemingly related to only two discrete investigations, to any and/or all investigations

assumingly referencing Jeffrey Epstein and/or BANA. Counsel for BANA further asserted that it

was DOJ's burden to find all of these documents, which is contrary to the plain language of the

Federal Rules of Civil Procedure. *See* F. R. Civ. P. 45(d)(1) ("A party or attorney responsible for

issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or

expense on a person subject to the subpoena."). As it is clear that BANA is not withdrawing the

Subpoenas it issued, and it is BANA's position that it is not the responsibility of BANA to determine what documents are publicly available or not, DOJ's only option is to move to quash the Subpoenas that clearly do not comply with the DOJ *Touhy* regulations and the Federal Rules of Civil Procedure.

**II.**   <u>**Legal Standard**</u>

**A.**   **Standard to Quash or Modify Subpoena**

Federal Rule of Civil Procedure Rule 45 provides that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."

Federal Rule of Civil Procedure 45 provides in pertinent part:
(c) Protecting a Person Subject to a Subpoena.
. . .
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
. . .
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena. . .
. . .
(d) Duties in Responding to Subpoena.
. . .
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged . . . must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible
things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**B.**   **The Department of Justice's *Touhy* Regulations Governing Testimony by FBI and USAO SDFL Employees**

In *Touhy*, the Supreme Court upheld a refusal by a Department of Justice employee to testify in response to a subpoena "on the grounds that the subordinate [was] prohibited from making such submission by his superior through" Department of Justice regulations. 340 U.S. at 467. Since *Touhy*, the Department of Justice and other federal departments and agencies have routinely "promulgate[d] … *Touhy* regulations to govern the conditions and procedures by which employees may testify about work related issues at trial." *United States v. Guild*, 2009 WL 260645, *7 (4th Cir. Aug. 25, 2009) (O'Connor, Assoc. Jus., ret.). *Touhy* applies in both civil and criminal cases and is valid. *Touhy*, 340 U.S. at 466-70; *United States v. Bizzard,* 674 F.2d 1382, 1387 (11th Cir.), *cert denied* 459 U.S. 973 (1982); *see also United States v. Luitgaren,* 2008 U.S. Dist. LEXIS 49836 (M.D. Fla. June 30, 2008). The regulations make clear that there is a general prohibition of production or disclosure in Federal and State proceedings in which the United States is not a party. *See* 28 C.F.R. § 16.22(a) ("…no employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties…without prior approval…"). *Touhy* regulations have also been applied to cases involving testimony rather than the production of documents. *See, e.g., United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007), *cert. denied*, 552 U.S. 1189 (2008).

Title 28 of the Code of Federal Regulations, section 16.22 governs "General prohibition of production or disclosure in Federal and State proceedings in which the United States is not a party." Section 16.22(b) of that title states:

> Whenever a demand is made upon an employee or former employee as described in [16.22(a)]… the employee shall immediately notify the U.S. Attorney for the district where the issuing authority is located. The responsible United States Attorney shall follow the procedures set forth in § 16.24 of this part.

6

28 C.F.R. § 16.22(b). Looking then to § 16.24, it states:

> The responsible official,[3] subject to the terms of paragraph (c) of this section, may authorize the appearance and testimony of a present or former Department employee, or the production of material from Department files if:
>
> (1)    There is no objection after inquiry of the originating component;
> (2)    The demanded disclosure, in the judgment of the responsible official, is appropriate under the factors specified in § 16.26(a) of this part; and
> (3)    None of the factors specified in § 16.26(b) of this part exists with respect to the demanded disclosure.

The Department's *Touhy* regulations require that where any of the factors present in §

16.26(b) exist, no disclosure shall be authorized. Specifically, § 16.26(b) states:

> Among the demands in response to which disclosure **will not** be made by any Department official are those demands with respect to which any of the follow factors exist:
>
> (1)    Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e);
> (2)    Disclosure would violate a specific regulation;
> (3)    Disclosure would reveal classified information, unless appropriately declassified by the originating agency;
> (4)    Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection;
> (5)    Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired; and
> (6)    Disclosure would improperly reveal trade secrets without the owner's consent.

28 C.F.R. § 16.26(b).

---

[3] "Responsible official" in defined in 28 C.F.R. § 16.24(a) as "a U.S. Attorney" relating to matter referred under § 16.22.

III.   <u>**Argument**</u>

A.   **The Subpoenas are Unduly Burdensome, Vague, and Over-Broad**

Federal Rules of Civil Procedure 26(c)(1) and 45(d)(3) protect parties or persons from undue burden. Courts have recognized the need to reduce the discovery burden on nonparties. *See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc*., 161 F.R.D. 86, 88 (N.D. Cal. 1995) (quoting *United States v. C.B.S.,* 666 F.2d 364, 371-72 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party.... [A] witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or producing party.").

The need to reduce the discovery burden on nonparties is especially important where, as here, the request is for testimony of a government employee. The government has a "legitimate interest in orderly government operations and the proper use of officials' time." *Alex v. Jasper Wyman & Son*, 115 F.R.D. 156, 157 (D. Me. 1986); *see also Sharon Lease Oil Co. v. F.E.R.C*., 691 F. Supp. 381, 384 (D.D.C. 1998) (same). Indeed, "[c]ourts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government." *See, e.g., Gomez v City of Nashua, N.H*., 126 F.R.D. 432, 436 (D. N.H. 1989).

Here, according to representations made by the FBI, publication of the relevant records pertaining to the investigations referenced in BANA's Subpoenas has already occurred, under the EFTA. The time that it would take for the FBI and USAO SDFL to independently search all records, which are publicly available and therefore already accessible to BANA, and designate people to sit for depositions related to the publicly available information, would be cumbersome

and take FBI and USAO SDFL employees away from their important duties. The New York investigative file alone contained 734 serials. Harris Declaration, attached as Exhibit E. A serial is an entry into Sentinel, FBI's case management system, which can contain any number of attachments or documents. *Id*. at fn. 1. The Miami investigative file contains 256 serials, in addition to documents that were migrated to Sentinel from a previous case management system, which could result in a more time intensive search for responsive documents. *Id*. at ¶ 9.  Once documents are searched and collected from the Sentinel database, a relevancy review is conducted, followed by a privilege review. *Id.* at ¶¶ 11-12. The privilege review includes a line-by-line review of documents responsive to the Subpoenas. *Id.* at ¶ 15. Currently, the Discovery Unit (DU) of the FBI is understaffed and has a caseload of 274 open and active discovery matters. *Id*. at ¶¶ 19-20. Thus, the Subpoenas are unduly burdensome and unlikely to lead to any relevant information beyond that which is publicly available or already in BANA's possession.

The Subpoenas are also vague and over-broad, attributing to the unduly burdensome nature of the requests. The Subpoenas list 16 separate areas of inquiry for which testimony and document production is requested. *See* Exhibit A, at pp.9-12. Within these 16 different areas of inquiry there are requests for everything and anything related to two separate investigations conducted approximately 12 years apart. Additionally, the Subpoenas request documents related to any other investigations into Jeffrey Epstein, not already listed. Finally, the Subpoenas request information about how DOJ obtains SARs in connection with **any** investigation. These areas of inquiry are the very definition of over-broad and vague and would surely cause an undue burden on the government.

Similarly, these Subpoenas fail "to allow a reasonable time to [comply]." Fed. R. Civ. P. 45(d)(3)(A)(i). BANA served the Subpoenas on the USAO SDFL on February 23, 2026, seven

9

business days before the March 4, 2026, return date. Although Rule 45 does not define what constitutes a reasonable time to comply, "generally, courts make the determination of reasonableness on a case-by-case basis, considering the factors at work in the given case." *Parrot, Inc. v. Nicestuff Distrib. Int'l, Inc.*, No. 06-61231-DIMITROULEA, 2009 WL 197979, at *4 (S.D. Fla. Jan. 26, 2009); *see also Minor I Doe through Parent I Doe v. Sch. Bd. For Santa Rosa Cnty., Fla.*, No. 3:08CV361/MCR/EMT, 2009 WL 10674249, at *2. (N.D. Fla. Nov. 23, 2009). ("[C]ommon sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case."). Federal courts across the country have held that requiring a party to comply within a week of service is not reasonable. *See, e.g., Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, No. 1:07-CV-956, 2009 WL 724001, at *1 (W.D. Mich. Mar. 10, 2009) ("Two business days, more or less, even with the intervening weekend, is not an adequate period of time to comply with a subpoena."); *In re Stratosphere Corp. Sec. Litig.*, 183 F.R.D. 684, 687 (D. Nev. 1999) (finding six days' notice "unreasonably short"); *Regueiro v. Am. Airlines, Inc.*, No. 19-CV-23965-JEM, 2022 WL 2359764, at *3 (S.D. Fla. May 19, 2022) (holding eight days' notice "did not afford the witnesses a reasonable time to comply with the *duces tecum* request"). Allowing only 7 business days in which to respond to 16 broad areas of inquiry is patently unreasonable.

Finally, Rule 45(d)(1) requires that the party (and its attorney) "responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). And, the court where compliance is required "must enforce this duty." *Id.* BANA has a duty to "take reasonable steps to avoid imposing undue burden" on DOJ, and the Court, likewise, has a duty to enforce this obligation. As mentioned above, BANA allowed only 7 business days for compliance with the Subpoenas it

10

issued to DOJ. Additionally, the records requested by BANA are likely encompassed within the millions of documents disclosed under the EFTA, and BANA has an obligation to do their due diligence in retrieving such records from the publicly available sources, rather than putting that burden on the government. As mentioned herein, to the extent any records exist that have not been publicly released, of which  DOJ is not aware, several privileges would be applicable and prohibit such disclosure.

**B.     The Subpoenas Should be Quashed Under the Department of Justice's *Touhy* Regulations**

Out of an abundance of caution, whether or not any records exist that have not already been published under the EFTA, both the FBI and USAO SDFL have authority under 28 C.F.R. § 16.21, *et seq.* to refuse a demand for testimony or production of documents, when the information sought would require the disclosure of information subject to the lists in 28 C.F.R. § 16.26(a) and (b). Here, DOJ has properly refused BANA upon consideration of 28 C.F.R. § 16.26(a)(1) and (2) and (b)(1), (2), and (5). Disclosure is not permitted because the parameters of the testimony and production of documents BANA seeks, to the extent that any documents exist that are not already publicly available pursuant to the EFTA, would require the disclosure of information subject to the investigatory files/law enforcement privilege, attorney-client privilege, work product privilege, and deliberative process privilege,  as well as result in violations of the Privacy Act and Bank Secrecy Act.

The Subpoenas should be quashed and a protective order entered because DOJ's decision to refuse testimony and production of documents in this case is valid. Here, BANA is seeking documents likely in their possession already or publicly available. Whether or not  such documents exist that have not already been produced pursuant to EFTA, such documents would fall under one of the privileges discussed above, or in the case of the Suspicious Activity Reports (SARs), would

be statutorily prohibited from disclosure. For these reasons alone, the Subpoenas should be quashed.

DOJ additionally objects to the Subpoenas pursuant to 28 C.F.R. § 16.21 *et seq.,* Rule 45(c)(3)(A)(iii), Fed. R. Civ. P. and the investigatory files/law enforcement privilege. Rule 45 allows a party to object to a subpoena on the basis of a privilege.[4]

The investigatory files privilege applies to the "informal deliberations of all prosecutorial agencies and branches of the government." *United States v. Graham*, 555 F. Supp. 2d 1046, 1048 (N.D. Cal. 2008) (citing, *NLRB v. Silver Spur Casino*, 623 F.2d 571, 580 (9th Cir. 1980), *cert. denied*, 451 U.S. 906 (1981)). This privilege is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *White v. City of Fort Lauderdale*, 2009 WL 1298353, *2 (Slip Op. No. 08-60771-CIV S.D. Fla. May 8, 2009) (Simonton, Mag. J.) (citing, *In re Matter of Eisenberg*, 654 F.2d 1107, 1110, n. 5 (5th Cir. 1981) (Unit B) (recognizing the federal privilege for production of documents relating to criminal investigations) and *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969). *See also Black v. Sheraton Corp. of America*, 564 F.2d 531, 541 (D.C. Cir. 1977); *Battiste v. U.S. Dep't of Justice*, 2009 WL 3086429 *6 (Slip Op. No. 08-cv-1379 N.D.N.Y. Sept. 23, 2009). The Government has a compelling interest in preserving the secrecy of law enforcement techniques. *United States v. Corces*, 1997 WL 447979, at *9 (Slip Op. No. 92-28-CR-T-17B, M.D. Fla. July 28, 1997), *aff'd*, 152 F.3d 934 (11th Cir. 1998). In certain circumstances, the Government may continue to withhold investigatory files even when the investigation in question has concluded:

> It is clear that if investigatory files were made public subsequent to the termination
> of enforcement proceedings, the ability of any investigatory body to conduct future

---

[4] Of note, it is DOJ's understanding that documents responsive to the Subpoenas have been produced under the EFTA, based on representations from the FBI. However, to the extent any files exist that have not been produced, these privileges apply.

investigations would be seriously impaired [as] the investigative techniques of the investigating body would be disclosed to the general public.

*U.S. v. Ketner,* 566 F. Supp. 2d 568, 580-81 (W.D. Tex. 2008) (*quoting, Black*, 564 F.2d at 546).

When deciding whether the privilege applies, the Court, in its discretion, must balance the needs of the litigant who is seeking the privileged materials against the harm to the government if the privilege is lifted.[5] *Id*. Only when the information sought is "both relevant and essential" to the presentation of the case on the merits and "the need for disclosure outweighs the need for secrecy," is the privilege overcome. *Battiste, supra*, at *6 -*7. "Whether the showing of relevance and need rises to the requisite level is a discretionary determination that must necessarily be made on a case-by-case basis." *White, supra*, 2009 WL 1298353 at *2.

DOJ invokes the law enforcement/investigatory files privilege based on actual personal considerations of the parameters of the testimony and production request provided by counsel for BANA, and has provided an explanation of why any documents, if they exist, that have not been disclosed pursuant to EFTA fall within the scope of the privilege. The information protected includes investigative steps to pursue in the conduct of an investigation, informal deliberations and opinions and conclusions about the evidence gathered during the course of the investigation, as

---

[5] Courts balance some or all of these factors in assessing the privilege: (1) extent to which disclosure will thwart governmental processes; (2) impact upon persons who have given information of having their identities disclosed; (3) degree to which governmental self-evaluation and consequent program improvement will be chilled; (4) whether information sought is factual data or evaluative summary; (5) whether party seeking discovery is an actual or potential defendant in any criminal proceeding; (6) whether investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from investigation; (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether information sought is available through other discovery or from other sources; and (10) importance of the information sought to plaintiff's case. *Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D.Fla.1980)(quoting, *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973), *overruled on other grounds, Startzell v. City of Philadelphia*, No. 05- 5287, 2006 WL 2945226, 4 (E.D. Pa. Oct 13, 2006).

well as other information protected by the privilege. It is paramount that the disclosure of law enforcement techniques and procedures be prevented. DOJ believes that there is a compelling interest in preserving secrecy of law enforcement techniques in order to not disadvantage law enforcement authorities from performing their statutory duties. *Id*.

BANA has not demonstrated any specific need for the material, should it exist outside of records publicly available, under the factors the Court must balance. *See United States v. $99,480 In U.S. Currency*, 2007WL 1804531, *1 (Slip Op. No. 06-22966-CIV. S.D. Fla. June 20, 2007). Based on the circumstances of the case, Rule 45(c) bars disclosure of the law enforcement/investigatory files sought and while BANA has thus far not provided any claimed need, even if they did, such claimed need would, when balanced against the harm to DOJ if the privilege is lifted, clearly weighs heavily in favor of DOJ. The harm to DOJ and Government in any criminal prosecution if the privilege is lifted is significant. It is paramount that the disclosure of law enforcement techniques and procedures be prevented, so that this information cannot be used to interfere in investigations. DOJ believes that there is a compelling interest in preserving secrecy of law enforcement techniques in order to not disadvantage law enforcement authorities from performing their statutory duties.

Further, to the extent any documents exist that have not already been publicly produced, DOJ objects to disclosure based upon attorney-client, work product, and deliberative process privilege. Before the Government can withhold inter-agency documents under the deliberative process privilege, it must show that the document is (1) predecisional, i.e., "prepared in order to assist an agency decisionmaker in arriving at his decision," *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975), and (2) deliberative, i.e., "a direct part of the deliberative process in that it makes

14

recommendations or expresses opinions on legal or policy matters." *Nadler v. United States Dep't of Justice,* 955 F.2d 1479, 1491 (11th Cir.1992) (quoting *Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975)). Requesting information about how law enforcement agencies use or obtain certain documents clearly falls within the purview of such privilege. Additionally, any documents relevant to the Subpoenas, if any exist, would be subject to the work product privilege. Rule 26(b)(3)(A) provides, in relevant measure, that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, *consultant,* surety, indemnitor, insurer, or agent)." Many of the areas of inquiry listed in the Subpoenas relate to communications and work performed in investigations that were conducted in anticipation of litigation. *See* Exhibit A at p. 10, ¶¶ 3,5, 8, 10, 15, 16. The same holds true for the Attorney-Client privilege.  The attorney-client privilege is "'the oldest of the privileges for confidential communications known to the common law.'" *United States v. Zolin,* 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989), quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). This privilege "'exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice.'" *Hope For Families & Community Serv., Inc. v. Warren,* 2009 WL 1066525, *4 (M.D. Ala. Apr. 21, 2009), quoting *In re Grand Jury Proceedings 88-9 (MIA),* 899 F.2d 1039, 1042 (11th Cir. 1990). Communications between the USAO and any of its agency clients, such as the FBI, would be considered attorney-client privilege and not subject to disclosure. As such, to the extent any documents exist that have not already been publicly produced, such documents and testimony  would be subject to the above asserted privileges.

### C.      Objections Premised Upon Privacy Act

DOJ additionally objects to the Subpoenas on the basis of the Privacy Act. *See* Exhibit D.

The Privacy Act provides, in pertinent part:

> (b) Conditions of Disclosure – No agency[6] shall disclose any record which is contained in a system of records[7] by any means of communication to any person, or to another agency, except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, unless disclosure would be—
> (3) for a routine use as defined in subsection (a)(7) of this section and described in (e)(4)(D) of this section;
> …
> (11) pursuant to the order of a court of competent jurisdiction;…[8]

5 U.S.C. § 552a(b)(3), (11).

The information sought through the Subpoenas is necessarily contained in a DOJ "system of records" within the meaning of the Privacy Act.[9] DOJ is prohibited from disclosing any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the

---

[6] For purposes of the Privacy Act, "the term 'agency' means agency as defined in section 552 (e)(1) of this title." 5 U.S.C. § 552a(a)(1).

[7] The terms "record" and "system of records" mean:
> (4) the term "record" means an item, collection, or grouping of information about an individual that is maintained by an agency, including but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph;
> (5) the term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. § 552a(a)(4), (5).

[8] There are 12 statutory bases for disclosure.

[9] Again, DOJ is unaware of any documents responsive to the Subpoenas that have not already been publicly disclosed under the EFTA, based on representations made by the FBI. However, to preserve its claim of privilege, DOJ asserts this argument.

individual to whom the record pertains, unless disclosure of the record is authorized under one of 12 statutory provisions.

"Subpoenas-grand jury or otherwise-do not qualify as 'order[s] of a court of competent jurisdiction' under 5 U.S.C. § 552a(b)(11), unless they are specifically approved by a court." *Doe v. DiGenova*, 779 F.2d 74, 85 (D.C. Cir. 1985) (citing, *Stiles v. Atlantic Gas Co.*, 453 F. Supp. 798, 799 (N.D.Ga.1978); *Doe v. Stephens*, 851 F.2d 1457, 1465-67 (D.C. Cir. 1988). As of the date of this motion, DOJ is not aware of a Court of competent jurisdiction approving the Subpoenas.

Thus, in this case, the Privacy Acy precludes DOJ from providing any information responsive to the Subpoenas that is contained in a system of records.

### D.     Objections Premised on the Bank Secrecy Act

Finally, DOJ objects to the Subpoenas based on the Bank Secrecy Act. 12 U.S.C. 1829b, 12 U.S.C. 1951-1960, 31 U.S.C. 5311-5314, 5316-5336. The Subpoenas issued by BANA request information related to Suspicious Activity Reports (SARs). *See* Exhibit A at ¶¶ 4, 9, 14, 16. Suspicious Activity Reports (SARs) are statutorily protected from disclosure under the Bank Secrecy Act. *See* https://www.fincen.gov/resources/statutes-regulations/guidance/unauthorized-disclosure-suspicious-activity-reports (last accessed Feb. 26, 2026). Both financial institutions and federal governmental authorities are prohibited from disclosing a SAR, or any information that would reveal the existence of a SAR. 31 C.F.R. § 1020.320(e). Additionally, such information should be available to BANA, as federal regulations require retention of SARs for a period of 5 years from the date of filing the SAR. 31 C.F.R. § 1020.320(d). Therefore, as disclosure of such records is statutorily prohibited, and BANA has provided no information or documentation allowing for such disclosure, DOJ properly objected to the production of and testimony regarding any SARs referenced in the Subpoenas.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Federal Bureau of Investigation and the United States Attorney's Office for the Southern District of Florida respectfully request this Court enter an Order quashing the Subpoenas for testimony and production of records by the FBI and USAO SDFL and enter a protective order barring such testimony and production.

Respectfully Submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:     /s/ Kelsi R. Romero
KELSI R. ROMERO
Assistant U.S. Attorney
United States Attorney's Office
Southern District of Florida
Special Bar No. A5502758
500 East Broward Blvd, Suite 700
Fort Lauderdale, FL 33394
Kelsi.Romero@usdoj.gov

Steven R. Petri
Assistant United States Attorney
 Federal Bar No. A5500048
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33394
(954)660-5799; Fax: (954)356-7180
Email: Steve.Petri@usdoj.gov

Matthew J. Feeley
Assistant United States Attorney
Southern District of Florida
Fla. Bar. No. 0012908
99 N.E. 4th Street
Miami, Florida 33132
Telephone: (305) 961-9235
Facsimile: (305) 530-7139
Email: matthew.feeley@usdoj.gov

18